# United States Court of Appeals
## For the First Circuit

No. 03-2436

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE DE LOS SANTOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

David Abraham Silverman for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom
H.S. Garcia, United States Attorney, was on brief, for appellee.

August 24, 2005

**LIPEZ, Circuit Judge**.  Primarily relying on arguments relating to the safety valve requirements of the law and the Sentencing Guidelines, defendant-appellant Jorge De Los Santos seeks a remand for resentencing in light of <u>Blakely</u> v. <u>Washington</u>, 542 U.S. 296 (2004), and <u>United States</u> v. <u>Booker</u>, __ U.S. __, 125 S. Ct. 738 (2005).  We affirm De Los Santos's sentence.[1]

## I. Background

On May 27, 2003, De Los Santos pled guilty to one count of conspiracy to possess, with intent to distribute, 900 grams of a substance containing heroin, an offense that carries a mandatory minimum sentence of 60 months of imprisonment.  <u>See</u> 21 U.S.C. §§ 841, 846.  The relevant facts are brief and undisputed: beginning no later than December 2000, while based in the U.S. Virgin Islands, De Los Santos participated in a conspiracy to import and distribute heroin in Puerto Rico and the continental United States by supplying heroin to co-conspirators in exchange for cash.  In a plea agreement, De Los Santos stipulated that the drug quantity involved in the offense was 900 grams of heroin, corresponding to a base offense level of 30 under the U.S. Sentencing Guidelines.  U.S.S.G. § 2D1.1.  The parties jointly

---

[1]De Los Santos's appeal was originally consolidated with that of a co-defendant.  Because the issues raised in the two appeals are unrelated, we have chosen to issue separate decisions.  <u>See</u> <u>United States</u> v. <u>Barnes</u>, 244 F.3d 172, 175 n.2 (1st Cir. 2001).  We issue both decisions today.  <u>See</u> <u>United States</u> v. <u>Delgado-Hernandez</u>, No. 03-2245 (1st Cir. Aug. 24, 2005).

agreed to recommend that De Los Santos receive a three-level decrease if he accepted responsibility pursuant to U.S.S.G. § 3E1.1, no adjustment based on his role in the offense pursuant to U.S.S.G. §§ 3B1.1 and 3B1.2, and a two-level decrease pursuant to U.S.S.G. § 2D1.1(b)(6) if he complied with each of the five "safety valve" requirements set forth in 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2(a)(1)-(5).[2]  Under the agreement, De Los Santos's

---

[2]U.S.S.G. § 2D1.1(b)(6) was renumbered as § 2D1.1(b)(7) in 2004.  That Guideline provides for a two-level decrease in offense level for covered offenses "[i]f the defendant meets the criteria set forth" in U.S.S.G. § 5C1.2(a)(1)-(5):

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the

-3-

lowest possible total offense level was 25, which corresponds to a Guidelines sentencing range ("GSR") of 57-71 months of imprisonment for a defendant in Criminal History Category I. Finally, upon the court's acceptance of the plea agreement "and the calculations of defendant's Adjusted Offense Level contained [t]herein," the parties jointly agreed to "recommend a sentence of sixty months (60) imprisonment" -- the statutory minimum -- "or the nearest term of imprisonment available under the Sentencing Guidelines."

At his sentencing hearing on September 12, 2003, De Los Santos confirmed that he declined to be debriefed in order to pursue a safety valve sentence reduction. The district court then imposed a three-level decrease from a base offense level of 30 for acceptance of responsibility and sentenced De Los Santos to 70 months of imprisonment, at the bottom of the applicable GSR of 70-87 months for a defendant in Criminal History Category I with a

---

fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

These criteria are identical to the safety valve criteria set forth in 18 U.S.C. § 3553(f)(1)-(5). See United States v. Bermúdez, 407 F.3d 536, 541 (1st Cir. 2005) ("The Sentencing Commission incorporated the text of § 3553(f) verbatim into the Guidelines."). Pursuant to U.S.S.G. § 5C1.2(a) (with an exception not applicable here), "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets" the five criteria. See also 18 U.S.C. § 3553(f).

total offense level of 27. The court also imposed a four-year term of supervised release and a special monetary assessment of $100. De Los Santos timely appealed his sentence.

## II. **Blakely** and **Booker** Claims

Briefing in this case was completed prior to the Supreme Court's decision in United States v. Booker, __ U.S. __, 125 S. Ct. 738 (2005). In his opening brief, De Los Santos sought resentencing under Blakely v. Washington, 542 U.S. 296 (2004), on the ground that the Sixth Amendment requires the facts determining compliance with the safety valve requirements of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a) to be found by a jury (beyond a reasonable doubt) rather than by a judge (by a preponderance of the evidence). Because he did not understand that requirement when he decided, prior to Blakely, not to participate in the safety valve regimen, De Los Santos argues that he would have made a different decision if he had known that his entitlement to a sentence reduction would have to be found by a jury by a reasonable doubt. This claim is a non-starter. A change in the law does not warrant vacating a sentence so that the defendant may reconsider his initial decision not to pursue a safety valve reduction, just as a change in the law does not warrant vacating a guilty plea so that the defendant may choose to face trial instead. See United States v. Sahlin, 399 F.3d 27, 31 (1st Cir. 2005) ("[T]he possibility of

a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea.").[3]

In Booker, the Supreme Court clarified that Blakely applies to the federal sentencing Guidelines, holding that the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [to] be admitted by the defendant or proved to a jury beyond a reasonable doubt."  125 S. Ct. at 756.  In its remedial opinion, however, the Court eliminated any Sixth Amendment concerns under the Guidelines by severing the provision of the Sentencing Reform Act which made the Guidelines mandatory.  Id. at 764.[4]  After oral argument, we invited the parties to submit supplemental briefs addressing the effect of Booker and our circuit precedent on De Los Santos's claim of sentencing error.

Because De Los Santos failed to challenge the constitutionality of the Guidelines before the district court, his

---

[3]Even if De Los Santos had chosen to be debriefed for the safety valve, the fact that his entitlement to a sentence reduction, as distinct from a sentence enhancement, may have depended on judicial factfinding would not have offended Blakely or the Sixth Amendment.  See Bermúdez, 407 F.3d at 545 (possibility that "judicial factfinding prevented [defendant] from getting a potentially lower sentence than what he might have gotten absent that judicial factfinding . . . . does not implicate Blakely" (emphasis added)).

[4]The Court also severed 18 U.S.C. § 3742(e), which authorized appellate courts to engage in de novo review of certain sentencing issues.

claim of Booker error is unpreserved and subject only to plain error review on appeal. United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005). Under plain-error doctrine, we may notice and correct (1) error (2) that is plain, (3) that affected a defendant's substantial rights, and (4) that "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 77 (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

As we explained in Antonakopoulos, the relevant inquiry under Booker is not whether the Sixth Amendment precludes judicial factfinding by a preponderance of the evidence for purposes of imposing a mandatory sentence enhancement "beyond [the sentence] authorized by a jury verdict or an admission by the defendant." Id. at 75. Rather, "[t]he Booker error is that the defendant's Guidelines sentence was imposed under a mandatory system." Id. Because De Los Santos's sentence was imposed under a mandatory Guidelines regime, prongs one and two of the plain error analysis are satisfied. Id. De Los Santos fails, however, to meet his burden of persuasion on the "prejudice" prong, which requires him to "point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." Id.

De Los Santos argues that factors relating to his decision not to participate in the safety valve regimen, as well as other mitigating factors in the record, establish a reasonable probability of a lower sentence under an advisory Guidelines system on remand. First, he asserts that he declined to be debriefed by the government only because he "did not want to squeal on anyone" and because he "fear[ed] for the safety of himself and his family." See 18 U.S.C. § 3553(f)(5) (conditioning satisfaction of the safety valve requirements on defendant's "truthful[] provi[sion] to the Government [of] all information and evidence [he had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan"); U.S.S.G. § 5C1.2(a)(5) (same). We have no reason to doubt that De Los Santos had weighty reasons for deciding not to seek a safety valve reduction. We fail to see, however, why the district court would consider De Los Santos's rationale for forgoing an opportunity for a lower sentence to be a mitigating factor in support of a lower sentence.

De Los Santos next points to evidence contained in his pre-sentence investigation report showing that he experienced a difficult childhood, has a history of alcohol abuse, and is deportable as a consequence of his drug-trafficking conviction, as factors supporting a remand for resentencing under Booker. We note that the district court, while not bound by the parties' joint recommendation of either the 60-month statutory mandatory minimum

-8-

sentence or "the nearest term of imprisonment available under the Sentencing Guidelines," did sentence De Los Santos to the lowest available sentence in the applicable GSR of 70-87 months of imprisonment, evidencing at least some willingness to be lenient.

While "[w]e are inclined not to be overly demanding as to proof of probability where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines," United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005), we are unable to discern any such indication based on the combination of mitigating factors identified here. See United States v. Tavarez, 410 F.3d 1, 2 (1st Cir. 2005) (defendant seeking Booker remand could not show prejudice under plain error review by pointing to his "status as a deportable felon, his psychiatric history, and his recognition of the consequences of his crime on family members"). Having failed to demonstrate a reasonable probability of a lower sentence under advisory guidelines, De Los Santos's Booker claim must fail.[5]

---

[5]Because De Los Santos declined to be debriefed in order to seek a safety valve reduction, the district court had no occasion to apply either U.S.S.G. § 2D1.1(b)(6) (now § 2D1.1(b)(7)) or its statutory counterpart, 18 U.S.C. § 3553(f). This case therefore does not require us to decide whether a court applying the safety valve pursuant to 18 U.S.C. § 3553(f), which provides that "the court shall impose a sentence pursuant to" the Guidelines (emphasis added) "without regard to any statutory minimum sentence" if the five criteria are met, must nevertheless treat the Guidelines as advisory under Booker. See United States v. Serrano-Beauvaix, 400 F.3d 50, 56 (1st Cir. 2005) ("The effect of Booker, if any, on the

### III. Drug Testing Condition of Supervised Release

At the sentencing hearing, the district court ordered De Los Santos to observe "the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court." In its written judgment, the court specified that, as one of those conditions, "[t]he defendant shall submit to one drug test within 15 days of release from imprisonment and <u>at least</u> two periodic drug tests thereafter" (emphasis added).

De Los Santos argues that the written drug testing provision could be construed as "vest[ing] the probation officer with the discretion to order an unlimited number of drug tests" in violation of 18 U.S.C. § 3583(d), which requires the determination of the maximum number of tests to be made by the court. <u>See</u> <u>United States</u> v. <u>Melendez-Santana</u>, 353 F.3d 93, 103 (1st Cir. 2003), <u>overruled on other grounds by</u> <u>United States</u> v. <u>Padilla</u>, No. 03-1918, 2005 U.S. App. LEXIS 15153 (1st Cir. July 25, 2005) (en banc) (declining to revisit settled law that district court's delegation of the discretion to determine the maximum number of drug tests to a probation officer is legal error, but holding that such error

_____

safety valve has not been determined."), <u>petitions for cert. filed</u>, ___ U.S.L.W. ___ (U.S. May 27, 2005) (No. 04-10405), <u>and</u> ___ U.S.L.W. ___ (U.S. June 2, 2005) (No. 04-10489); <u>cf.</u> <u>United States</u> v. <u>Duran</u>, 2005 U.S. Dist. LEXIS 1287, at *13 (D. Utah Feb. 17, 2005) (concluding that the Guidelines are advisory for purposes of safety valve sentences and noting that the government "agrees that an interpretation of the safety valve 'that treats the [G]uidelines as mandatory cannot be reconciled with <u>Booker</u>.'").

does not warrant an automatic remand for resentencing if forfeited).[6]

De Los Santos also argues that the written judgment could potentially be construed as being in material conflict with his oral sentence in violation of his right to be present during the imposition of any "potentially significant new burden," id. at 100 -- here, the burden of "a written drug testing condition, not announced at the sentencing hearing, which orders more drug tests than the minimum three required by the statute," United States v. Tulloch, 380 F.3d 8, 13 (1st Cir. 2004) (emphasis omitted). See id. (declining to decide whether imposition of such a condition in a written judgment but not at the sentencing hearing would violate defendant's right to be present). In order to avoid these possibilities, De Los Santos seeks judicial amendment of the written drug testing provision and/or a limited remand for the purpose of resentencing on the drug testing condition of supervised release.

In United States v. Lewandowski, 372 F.3d 470 (1st Cir. 2004) (per curiam), we confronted a drug testing provision identical to that imposed in the written judgment in this case.

_____

[6]18 U.S.C. § 3583(d) provides, in relevant part, that "[t]he court shall . . . order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance" (emphasis added).

-11-

Although the provision contained no express delegation of authority to a probation officer, we "construe[d] the condition to cap the number of drug tests at three, i.e., to state both the maximum and minimum number of tests.  In effect, we read the words 'at least' out of the condition as imposed, so that it requires only three drug tests during the supervised release term." Id. at 471.  We further stated that "probation officers who monitor supervisees subject to the drug testing condition we consider here may not require more than the minimum three tests without obtaining a modification of the condition under 18 U.S.C. § 3583(e)." Id.  We apply the same construction to the written drug testing provision here.

As De Los Santos acknowledges, this construction of the drug testing provision eliminates the possibility that it could be interpreted as imposing a condition of supervised release materially different from that of which he had constructive notice during oral sentencing. See Tulloch, 380 F.3d at 13 (defendant had constructive notice of burden imposed by drug testing condition that is "consistent with the burden mandated by § 3583(d)").

Accordingly, as construed herein, and in all other respects, De Los Santos's sentence is **affirmed**.

**So ordered**.